1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SNYDER ♦ DORENFELD, LLP
David K. Dorenfeld, (State Bar No. 145056)
Michael W. Brown, (State Bar No. 205380)
5010 Chesebro Road
Agoura Hills, CA 91301
Telephone:  (818) 865-4000
Facsimile:  (818) 865-4010
Emails: dkd@sd4law.com
           mwb@sd4law.com

CATHY JACKSON LERMAN, PA
Cathy J. Lerman
7857 W. Sample Rd., Suite 140
Coral Springs, FL 33065
Telephone: (954) 663-5818
Facsimile:  (954) 341-3568
Email: clerman@lermanfirm.com

BURSOR & FISHER, P.A.
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
Email: ltfisher@bursor.com

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

STANLEY LEVINE, individually and on behalf of a
class of similarly situated persons,

Plaintiff,

v.

MILLENNIUM TRUST  COMPANY, LLC,

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.:  **'12CV2210 JM   JMA**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

SNYDER ♦ DORENFELD, LLP

CLASS ACTION COMPLAINT

# I.  INTRODUCTION

1.     This is a class action lawsuit against Millennium Trust Company, LLC (the "Custodian,"  "Millennium Trust," or "Defendant") for making false and misleading representations that the investments made by Plaintiff and the Class Members were safe, profitable and legitimate when in fact the money invested by Plaintiff and the Class Members was being stolen by the individuals who urged them to invest (the "Fraud Promoters").

2.     For the reasons set forth below, Plaintiff and the Class Members invested their money into Self-Directed Investment Retirement Account ("SDIRAs").  A SDIRA is an individual retirement account ("IRA") held by a trustee or custodian that permits investment in a broader set of assets than is permitted by most IRA custodians.  It is estimated that approximately $94 billion was held in SDIRAs in the United States in 2011.

3.     Plaintiff and the Class Members were convinced to invest in the SDIRAs by Fraud Promoters, a term used by the SEC to describe individuals who devise and orchestrate Ponzi schemes to defraud innocent investors. The use of established companies like Millennium Trust provide a sense of legitimacy to an otherwise fraudulent investment scheme and help entice inexperienced investors to invest their money into the Fraud Promoters' fraudulent investments. The Fraud Promoters frequently emphasized the size and experience of the custodians as evidence of their credibility as investment advisers.

4.     The Fraud Promoters invested the money deposited by Plaintiff and the Class Members in their SDIRAs in "investments" that were fraudulent, illusory or non-existent. Millennium Trust aided and abetted the fraud by periodically sending out investment account statements showing extraordinary investment returns in the SDIRAs when in fact the Fraud Promoters were absconding or had already absconded with the victims' money.

5.     Millennium Trust was also obligated to report annually the fair market value of the SDIRAs.  Millennium Trust, however, failed to ascertain the actual value of the SDIRAs owned by

CLASS ACTION COMPLAINT                                                                                                  1

Plaintiff and the Class Members.  Instead, Millennium Trust reported the same value each year unless the Fraud Promoters provided a greater value in which case Millennium Trust reported the increased value to the victim.

6.     Millennium Trust knew that the Fraud Promoters were defaulting on loans, notes and other "investments" included in the SDIRAs.  Nevertheless, Millennium Trust failed to disclose that the Fraud Promoters were stealing the money invested by Plaintiff and the Class Members, reporting to the victims the inaccurate and inflated amounts and values provided by the Fraud Promoters, despite the knowledge that the money was gone.  Many of the victims lost their entire life savings.

## II.   JURISDICTION AND VENUE

7.      The Court has subject matter jurisdiction over this matter under 28 U.S.C. §1332 (d) (2) and the Class Action Fairness Act.  Plaintiff and certain Defendants are citizens of different states. The amount in controversy exceeds $5,000,000, exclusive of interest and costs.

8.     This Court has personal jurisdiction over Defendant pursuant to, *e.g.*, 18 U.S.C. § 1965, the due process clause of the U.S. Constitution, and the Code of Civil Procedure § 410.10. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's additional claims arising under California state law for violation of, *inter alia*, California's Elder Abuse and Dependent Adult Civil Protection Act (Welfare and Institutions Code § 15600, *et seq.*), California's Unfair Competition law (Business and Professions Code § 17200, *et seq.*), and California Corporations Code § 25000, *et seq.*

9.     Venue in this district satisfies the requirements of 28 U.S.C. §1391 (b) (1)-(2) because Defendant and some Class Members reside in this jurisdiction.

SNYDER ♦ DORENFELD, LLP

CLASS ACTION COMPLAINT                                                                            2

### III.   THE PARTIES

10.     Plaintiff Stanley Levine ("Levine") is 85 years old and a resident of Newport Beach, California. Levine invested approximately $225,000 in a fraudulent enterprise resulting in a total loss of his investment.

11.     Defendant Millennium Trust is a privately held trust company chartered by the state of Illinois with its principal place of business in Oak Brook, Illinois and maintains an office in Carlsbad, California.  Millennium Trust touts itself as having over 170,000 accounts with total assets under custody exceeding $4.6 billion as of December 31, 2011.

12.     Certain other individuals and entities who were involved in the fraudulent enterprises that damaged Plaintiff and the Class Members are not sued because they are fugitives, under criminal investigation or already in prison or their assets are being pursued by a trustee/receiver, or further collection efforts would be fruitless.

### IV.   FACTUAL ALLEGATIONS

**A.     SDIRAs and the Role of the Custodian**

13.     The trustees and custodians of traditional IRAs are considered fiduciaries of the IRA account such that the trustees and custodians are responsible for maintaining and managing the securities in the IRA account, keeping track of distributions and dividend income, and making sure everything is done legally and correctly.

14.     SDIRAs are administered by custodians or trustees.  A stark contrast exists, however, between the "administration" performed by trustees and custodians of SDIRAs, as compared to the "administration and management" performed by the trustees and custodians of traditional IRAs.

15.     Investors in SDIRAs are permitted to invest in a variety of nontraditional investment options of their own choosing, including tax lien certificates, promissory notes, real estate,

SNYDER ♦ DORENFELD, LLP

businesses, and LLCs.  Traditionally few large investment companies or banks will administer SDIRAs because of their complexity.

16.    Custodians of SDIRAs, however, deny any type of fiduciary responsibilities even though they receive significant fees for administering an SDIRA.  In fact, the custodians employ contracts of adhesion that seek to significantly limit their liability to their customers including Plaintiff and the Class Members.

17.    Millennium Trust has made hundreds of millions of dollars while claiming to "administer" SDIRAs that have resulted in many of their customers losing their entire life savings.

**B.    Millennium Trust Targeted Inexperienced Investors**

18.    Millennium Trust maintained company websites and engaged in extensive marketing campaigns that targeted inexperienced investors with retirement savings accounts, including 401ks and Roth IRAs, and provided investment advice and information about SDIRAs.

19.    To enhance the appearance of legitimacy of their services, Millennium Trust sponsored Webinars, seminars and conferences about the safety, efficiency and profitability of investing in SDIRAs.

**C.    The Investments Made by Plaintiff and the Class**

20.    Plaintiff and the Class Members invested in SDIRAs at the urging of the Fraud Promoters.  Indeed, the Fraud Promoters could not have obtained the monies in the retirement accounts of the Plaintiff and the Class members without using a SDIRA since that is the only investment vehicle which permits unregulated, non-traditional investments.  The Fraud Promoters, upon belief and information, include: Westmoore Management, LLC, Westmoore Investment, L.P., Westmoore Capital Management, Inc., Westmoore Capital, LLC, (collectively "Westmoore") and Matthew Jennings ("Jennings"), CEO of Westmoore, who perpetuated a $53 million Ponzi scheme/corporate shell game and was found guilty of securities fraud in August of 2011; Sean Michael Mueller who operated a securities trading business/Ponzi scheme from 2000 until 2010

CLASS ACTION COMPLAINT                                                                         4

that bilked investors of over $147 million; and Delbert Huelle and Capital Funding Partners whose Ponzi scheme management team included convicted felons.  These Fraud Promoters were not legitimate investment advisers but instead sought to defraud Plaintiff and the Class Members.

21.     In a class action suit pending in St. Claire County Circuit Court, Illinois entitled Sincoski v. Millennium Trust  Company, LLC (Case No. 12-L-277), the plaintiff asserted allegations regarding a Ponzi scheme known as the British Lending Program.  The plaintiff in Sincoski alleged that Millennium Trust became aware of the British Lending Program Fraud Promoters' wrongdoing before it was publicly disclosed.  Instead of notifying their SDIRA clients of the fraudulent investment scheme, Millennium Trust simply sent a letter to its British Lending Program SDIRA clients advising them that "due to administrative complexities" Millennium Trust had decided to resign as custodian of the SDIRAs for the British Lending Program without ever disclosing that Millennium Trust had actual knowledge that its SDIRA customers were the victim of a fraudulent investment scheme.

22.     The Sincoski Class Action Complaint further alleges that the British Lending Program victims did not learn about the fraudulent investment scheme until the federal indictment was unsealed against British Lending Program Fraud Promoters Martin Sigillito and Scott Brown in May of 2011.

23.     In a second suit pending in St. Clair County Circuit Court, Illinois, Cobb v. Millennium Trust Company, LLC, (Case No. 12-L-278) also arising out of the British Lending Program, plaintiffs Sharon Cobb and John Shahan allege that Millennium Trust knew in 2008 that the British Lending Program was a fraud and reported it to bank regulators but failed to disclose it to its own SDIRA customers who had invested with the British Lending Program. The plaintiffs in the Cobb case allege that Millennium Trust provided false account statements showing that their SDIRA funds had gone to the correct recipient but that was in fact false.  The Cobb plaintiffs also allege that after Millennium Trust learned of the fraudulent investment scheme, Millennium Trust

CLASS ACTION COMPLAINT                                                              5

permitted another $20M of its clients' SDIRA monies to be invested in the British Lending Program fraudulent scheme.

24.      The Fraud Promoters mandated that Plaintiff and the Class Members invest through SDIRAs.  The Fraud Promoters were acutely aware that their affiliation with and use of  SDIRA custodians provided a sense of legitimacy to an otherwise fraudulent investment scheme and enticed inexperienced investors, who might otherwise be more cautious, into an investment scam because they believed they were protected by a large, purportedly well-funded company with a trustworthy name like "Millennium Trust."

25.      To "sell" their victims, the Fraud Promoters frequently emphasized Millennium Trust's size and experience as further evidence of the Fraud Promoters' strength and credibility as a successful investment adviser and frequently indicated that investment scheme had been "approved" by Millennium Trust thus creating a further air of legitimacy for the Fraud Promoter.

26.      The Fraud Promoters also knew that the SDIRAs of Plaintiff and the Class Members were set up to automatically renew or "rollover" each year such that Plaintiff and the Class Members could not liquidate their investments automatically at the end of the investment period and, in fact, were not even notified at the end of any investment period that they could withdraw their investment funds or "choose" to reinvest.

**Plaintiff Stanley Levine**

27.      Plaintiff Stanley Levine first became aware of a potential investment opportunity with Fraud Promoter Matthew Jennings in 2008 through a client of Levine's accountant who worked for Jennings.

28.      Levine met Jennings, the principal of Westmoore, and Jennings explained to Levine that Westmoore had several subsidiary companies that provided a diverse range of investment opportunities including property development, venture capital backing for high growth start-up

SNYDER ♦ DORENFELD, LLP

companies desiring to go public, and business management companies. Jennings told Levine that Westmoore investors were receiving 17-18% return on investment ("ROI").

29.     Levine learned about investing through a SDIRA with Westmoore from Jennings.

30.     In June of 2010, Levine transferred $225,000 from his Schwab IRA to a Millennium Trust SDIRA.  Levine, through his Millennium Trust SDIRA, invested $100,000 in Westmoore Business LLC and $125,000 in Westmoore Lending LLC.  But in September of 2010, Levine's $100,000 investment in Westmoore Business LLC was moved to Westmoore Capital Group Series II.  Levine never knew why Millennium Trust and Westmoore made that transfer.

31.     Levine received an account statement from Millennium Trust for the third quarter of 2010 reflecting that the transfer of funds from his Schwab IRA account to his Millennium Trust SDIRA had been completed.  In that account statement, the balance of Levine's Millennium Trust SDIRA as of September 30, 2010 was $374,999.00.

32.     Levine's September 30, 2010 Millennium Trust SDIRA account statement did not define or identify the asset or assets being held by Levine's Millennium Trust SDIRA but simply referred to the SDIRA assets as "alternative investments."

33.     In December of 2010, Jennings threw a big, expensive Christmas party for all of his Westmoore investors.  Levine and his wife attended the event.

34.     At Jennings' Christmas party Levine met a California attorney, Steve Gribben ("Gribben"), who said he was doing some legal work "on the side" for Jennings and the Westmoore entities.

35.     During their conversation, Gribben commented to the Levines concerning Westmoore:  "I hope you haven't invested anymore.  I would not advise my mother to put money in this investment."  But Levine told Gribben that he had just invested another $225,000.  In response, Gribben just hung his head.  Levine realized later, after the Westmoore Ponzi Scheme was exposed, that Gribben was trying to warn Levine about Westmoore and Jennings.

CLASS ACTION COMPLAINT                                                    7

36.     Sometime in January of 2011, Levine found out that the SEC was investigating Jennings and Westmoore and, in fact, the SEC had indicated that Jennings was running a Ponzi scheme through Westmoore.  About this same time, Levine received a letter from Jennings indicating that Levine would not be receiving any more investment interest payments from any of his Westmoore investments.

37.     Thereafter, Levine received a letter advising him that the SEC was shutting down all of the Westmoore entities and that the Westmoore entities were being forced into receivership.

38.     The Levines attended a court hearing about the Westmoore receivership and the distribution of Westmoore assets.  Levine inquired as to what he might receive from the receivership but was told that it was unlikely Levine would receive anything from his Westmoore investment.

39.     Subsequently, the SEC announced that Jennings had raised money from investors through more than 15 offerings of debt and equity that were not registered with the SEC under securities laws and that Jennings had operated a corporate shell game/Ponzi scheme through Westmoore.

40.     In June of 2012, Levine decided to contact Millennium Trust about his SDIRA. Levine had received a SDIRA statement from Millennium Trust indicating that his Millennium Trust SDIRA had been closed in January of 2012 without Levine's knowledge.

41.     Levine called the Millennium Trust customer service number and spoke with "Marsha" who told Levine that Millennium Trust should never have opened Levine's SDIRA because Millennium Trust never received the documents establishing what assets were being held in Levine's SDIRA.  Levine then asked Marsha why Levine had been paying custodial administration fees to Millennium Trust for a couple of years as the custodian for his SDIRA when he did not have a Millennium Trust SDIRA and Marsha replied that she did not know the answer.

42.     Marsha also told Levine that she did not know what to do about his Millennium Trust SDIRA and would have to call him back.  Levine then asked Marsha for a copy of his Millennium Trust SDIRA statements for 2011.  Levine never heard back from Millennium Trust or Marsha after that call but Levine did receive his 2011 Millennium Trust SDIRA account statements.

43.     Levine's 2011 annual Millennium Trust SDIRA account statement indicated that Levine's SDIRA held "securities" with a negative value of $374,999.00 and a year-end market value of zero.

44.     In addition, Levine's Millennium Trust SDIRA account statement for the third quarter of 2011 stated that his assets were transferred to Millennium Trust on November 7, 2011. However, the Millennium Trust SDIRA statement also specified for each transfer, "ASSET SHOULD NOT HAVE BEEN TRANSFERRED."

45.     To this day, Levine has never found out what happened to his SDIRA assets, how or why Millennium Trust issued statements showing that Levine's retirement accounts had been consolidated into his Millennium Trust SDIRA or what assets were held in Levine's SDIRAs.

**D.     Millennium Trust Aided and Abetted the Fraud**

46.     Millennium Trust's conduct enabled, aided, abetted and facilitated the theft of the investment monies of Plaintiff and the Class Members who were targeted by the Fraud Promoters.

47.     The monies deposited into SDIRAs "administered" by Millennium Trust were stolen from Plaintiff and the Class Members through fraud, Ponzi schemes, and other criminal conduct.

48.     Millennium Trust knew that the Fraud Promoters were stealing the money invested by Plaintiff and the Class Members.

49.     In fact, Millennium Trust through its administration of the SDIRAs created the illusion that the SDIRAs of Plaintiff and the Class Members were profitable and legitimate.

CLASS ACTION COMPLAINT                                                                                          9

50.     Millennium Trust is required to report the fair market value ("FMV") of the SDIRA assets annually on IRS Form 5498 and to report the value of any distributions to the SDIRA owner on Form 1099-R.  Millennium Trust, however, failed and refused to ascertain the FMV of the SDIRAs owned by Plaintiff and the Class Members through a "qualified, independent third party." Instead, Millennium Trust reported the same value year after year unless, of course, the Fraud Promoters provided a greater value to Millennium Trust who then recorded it as the updated value of the SDIRA and further deceived Plaintiff and the Class Members into believing their investments were increasing in value and secure.

51.     On information and belief, Millennium Trust failed and/or refused to comply or abide by the regulatory requirements applicable to Custodian of SDIRAs in the rendition of their services as Custodian to Plaintiff and the Class Members.

52.     Plaintiff and the Class Members reinvested their money in the fraudulent investments because they appeared to pay a much better return than any alternative investment opportunity.  At least the investment returns appeared much better according to the misleading SDIRA account statements prepared by Millennium Trust.

53.     Millennium Trust also knew that the investment interest that purportedly was being earned in the SDIRAs of Plaintiff and the Class Members "appeared" in the account statement of the SDIRAs regardless of whether the accrued interest on the investment was actually deposited in the accounts owned by Plaintiff and the Class Members.  For the majority of victims, the accrued interest was not deposited.

54.     The IRS requires that IRA owners withdraw at least a minimum amount, known as a Required Minimum Distribution ("RMD") from their retirement accounts annually, starting the year an investor turns age 70 ½.  Thus, the RMD requirement demands that retirement assets have a certain degree of liquidity.  While RMDs may vary based on the ages of the investor and

SNYDER ◆ DORENFELD, LLP

beneficiary, as well as the rate of return earned on the investment, RMD amounts on most retirement accounts are usually less than 1/20 of the principal in the retirement account.

55.     Millennium Trust knew that the investments of Plaintiff and the Class Members were completely illiquid and that the Fraud Promoters were misappropriating the money invested by Plaintiff and the Class Members.  As a result, the investment accounts frequently failed to maintain enough cash to pay RMDs.  Indeed, Levine and other elderly class members were never able to withdraw their RMD.  In addition, because the value of the SDIRAs were grossly inflated, so were the RMD amounts subjecting Millennium Trust's customers to greater penalties and/or tax consequences upon a failure to take the distribution.

56.     Although Millennium Trust charged significant fees for its "administrative services," it also failed to perform one of the few "duties" it acknowledges exists for custodians of SDIRAs: it is to maintain custody of the paperwork proving ownership of a designated asset by the SDIRA.

57.     Millennium Trust failed and refused to maintain documents establishing the ownership of the assets in its customers' SDIRAs and, in fact, never accurately identified or verified the identity of the assets purportedly owned by the SDIRA of the Plaintiff and the Class Members.

58.     Millennium Trust also permitted illegal transfers of SDIRA assets to bank accounts controlled by Fraud Promoters without the knowledge, permission or assent of the actual SDIRA account holder through incomplete and/or forged SDIRA documents.

59.     It is common industry knowledge and some of the custodians have publicly acknowledged the fact that SDIRAs were being used by the Fraud Promoters to swindle investors. Despite that fact, Millennium Trust continued to market and affiliate with the Fraud Promoters after such was widely known in the industry and that such fraud was escalating.

SNYDER ♦ DORENFELD, LLP

60.     Millennium Trust has publicly acknowledged that although it claims to be a "passive" custodian, it has stopped "allowing customers to invest" in some SDIRA programs upon discovering issues with certain investment promoters.

61.     Upon information and belief, although Millennium Trust  classifies itself as a "passive custodian," its conduct appears to fall outside of a passive custodian role.

62.     Upon information and belief, Millennium Trust acted outside of a passive custodian capacity by: jointly marketing its SDIRA custodial services with Fraud Promoters and other investment promoters; running background checks on investment promoters but refusing to disclose the results of the background checks to its affected customers even if it determined that the investment scheme was a fraud; despite having actual knowledge of a fraudulent investment scheme, failing to disclose the existence of the scheme to its affected customers or otherwise warn its customer; and continuing to process new investments through SDIRAs with certain investment promoters even though it had actual knowledge that the investment promoter was perpetuating a fraudulent scheme.

63.     The Fraud Promoters who swindled Plaintiff and the Class Members could not have pulled off these multi-million dollar scams without the direct assistance of Millennium Trust.

64.     The Fraud Promoters kept tight control over the direction of investments and creation of SDIRAs with Millennium Trust.  The Fraud Promoters wanted to make sure they controlled the investment and that communications with investors such as Plaintiff and the Class Members were consistent so that no suspicions were aroused.

65.     Millennium Trust aided, facilitated and supported the Fraud Promoters' control of the victims, so it could maintain a significant revenue stream for essentially doing nothing.

66.     In fact, Millennium Trust knew that the Fraud Promoters were defaulting on loans and notes in the SDIRAs owned by Plaintiff and the Class Members repeatedly over multiple years but turned a blind eye.  Millennium Trust's failure to accurately report the value of the SDIRAs of

SNYDER ♦ DORENFELD, LLP

Plaintiff and the Class Members resulted in Plaintiff and the Class Members being unaware that their investment monies had actually been stolen, although their SDIRAs appeared to be increasing in value.

67.     Millennium Trust viewed and treated the Fraud Promoters as its partners and clients, not Plaintiff and the Class Members, which is why when the money ran out and the Ponzi schemes crumbled, Millennium Trust refused to provide assistance or help Plaintiff and the Class Members understand what happened to their investment money.

68.     Millennium Trust permitted the Fraud Promoter to provide the FMV of the assets of the SDIRAs of their victims but once the fraudulent scheme was exposed Millennium Trust required its customers to provide third party proof that the SDIRA was worthless and refused to modify the value of the SDIRA unless the victim/customer paid its administrative fees.

69.     Millennium Trust gave Plaintiff and the Class Members a false sense of security by making false and deceptive representations that their "investments" would be safe, insured, accurately administered, and legally sound.  Plaintiff and the Class Members, relying on those representations, tendered their hard-earned money to Millennium Trust, while Millennium Trust enabled the Fraud Promoters to steal the monies invested by Plaintiff and the Class Members. Many investors lost their entire life savings.

## V.   CLASS ACTION ALLEGATIONS

70.     Plaintiff brings this action on their behalf and as a class action pursuant to Rules 23(a) and (b) (3) of the Federal Rules of Civil Procedure on behalf of a class (the "Class") defined as all persons or entities who invested in or held an investment through a SDIRA administered by Defendant Millennium Trust from January 1, 2006 until the present (the "Class Period") and that was offered, sold or solicited by the Fraud Promoters.

71.     Plaintiff also brings this action on behalf of a subclass (the "California Subclass") defined as all California residents who invested in or held an investment through a SDIRA

SNYDER ♦ DORENFELD, LLP

administered by Defendant Millennium Trust from January 1, 2006 until the present and that was offered, sold or solicited by the Fraud Promoters.

72.     Plaintiff also brings this action on behalf of a subclass (the "California Senior Subclass") defined as all California residents over 65 years of age who invested in or held an investment through a SDIRA administered by Defendant Millennium Trust from January 1, 2006 until the present and that was offered, sold or solicited by the Fraud Promoters.

73.      The Class is so numerous that joinder of all Class Members is impracticable.  While the exact number of Class Members can only be determined by appropriate discovery, Plaintiff believes that the Class Members total over 500.

74.     Plaintiff's claims are typical of the claims of the other Class Members.  Plaintiff and all Class Members sustained damages as a result of Millennium Trust's unlawful course of conduct.

75.     Plaintiff will fairly and adequately protect the interest of the Class Members and have retained counsel competent and experienced in class action litigation.  Plaintiff has no interests that are contrary to or in conflict with those of the Class Members that Plaintiff seeks to represent.

76.     A class action is superior to other methods for the fair and efficient adjudication of this controversy.  The expense and burden of individual litigation make it virtually impossible for the Class Members individually to seek redress for the wrongful conduct alleged herein.

77.     Common questions of law and fact exist as to all Class Members and predominate over any questions solely affecting individual Class Members.  Among the questions of law and fact common to the Class are:

a.     Whether Millennium Trust made false and misleading

representations to Plaintiff and the Class;

SNYDER ♦ DORENFELD, LLP

b.    Whether Millennium Trust engaged in financial elder abuse of Plaintiff Levine and the California Senior Subclass Members;

c.    Whether Millennium Trust has violated California's Unfair Competition Law;

d.    Whether Millennium Trust's acts constitute violations of the Dodd-Frank Wall Street Reform and Consumer Protection Act; *See, e.g.,* 15 U.S.C. section 78u, *et seq.*;

e.    Whether Plaintiff and the Class Members have sustained damages as a result of the misconduct complained of herein, and, if so, the appropriate measure thereof.

78.    Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

79.    The names and addresses of Millennium Trust's customers who purchased its services during the Class Period are obtainable from information in the possession of Millennium Trust and/or its agents.  Notice can be provided to such owners via first class mail or e-mail using techniques and a form of notice similar to those customarily used in class actions.

## COUNT I

## <u>CONVERSION</u>

80.    Plaintiff incorporates the allegations contained in all of the prior paragraphs of this Complaint as if restated and fully set forth herein.

81.    As described more fully above, the Fraud Promoters' "investment" programs that Plaintiff and the Class Members invested in, were bogus.  Millennium Trust aided and abetted Ponzi schemes and other fraudulent conduct that permitted the Fraud Promoters to exercise unauthorized dominion and control over the property of Plaintiff and the Class Members.

SNYDER ♦ DORENFELD, LLP

82.     Millennium Trust's conversion has permanently deprived Plaintiff and the other Class Members of their property, causing damage.

83.     Plaintiff and the Class Members have repeatedly demanded that their funds be returned but Millennium Trust did not in fact return them.

84.     Millennium Trust's actions have directly caused injury and damages to Plaintiff and the Class Members.

## COUNT II

## **INTENTIONAL FRAUD**

85.     Plaintiff incorporates the allegations contained in all of the prior paragraphs as if restated and fully set forth herein.

86.     Millennium Trust made several misrepresentations to the public at large and to Plaintiff and the Class Members as set forth above.  In particular, Millennium Trust sent account statements to Plaintiff and the Class Members stating that the SDIRAs had significant value when in fact the money had been stolen.  Millennium Trust also falsely stated that the "investments" made by Plaintiff and the Class Members would be safe, insured, accurately administered, and legally sound when in fact they were not.

87.     Millennium Trust knew that these statements were false when it made them.

88.     Millennium Trust intended for Plaintiff and the Class Members to rely upon its false statements.

89.     Plaintiff and the Class Members did rely on Millennium Trust's false statements, and would never have invested in and continued to invest in SDIRAs with Millennium Trust were it not for the false statements.

90.     Millennium Trust has enjoyed substantial financial gain, and Plaintiff and the Class Members have suffered severe financial loss, as a result of these false statements.

SNYDER ♦ DORENFELD, LLP

91.     Plaintiff further alleges that Millennium Trust's conduct has been malicious, fraudulent, oppressive and has been carried out with an intent to damage and cause harm to the Plaintiff and the members of the Class, and to harass, vex and annoy Plaintiff and the members of the Class.  Therefore, Plaintiff and the members of the Class are entitled to recover punitive damages in an amount appropriate to punish or make an example of Millennium Trust.

## COUNT III

## CONSPIRACY

92.     Plaintiff incorporates the allegations contained in all of the prior paragraphs as if restated and fully set forth herein.

93.     Millennium Trust was engaged in a conspiracy with the Fraud Promoters to obtain money and property from Plaintiff and the Class Members through fraudulent means, including the fraudulent misstatements alleged herein.

94.     Millennium Trust agreed to commit the unlawful acts set forth herein, and the other violations of the law which were intended to advance and which did in fact advance and facilitate the objectives of the conspiracy.

95.     Millennium Trust committed overt acts in furtherance of the conspiracy, including but not limited to the acts set forth above in part to induce Plaintiff and the Class Members to invest in fraudulent enterprises.

96.     Millennium Trust joined with the Fraud Promoters and planned together this fraudulent course of conduct.

97.     As a direct, proximate and readily foreseeable consequence of the conspiracy and the acts committed in furtherance thereof, Plaintiff and the Class Members have been harmed by the loss of their money and property.

98.     As a direct, proximate and readily foreseeable consequence of the conspiracy and the acts committed in furtherance thereof, Plaintiff and the Class Members have suffered

SNYDER ♦ DORENFELD, LLP

CLASS ACTION COMPLAINT                                                                    17

1    substantial monetary damages in an amount to be proven at trial, and will continue to incur costs,

2    expenses and legal fees as a result.

3    **COUNT IV**

4    **VIOLATION OF CALIFORNIA'S ELDER ABUSE AND DEPENDENT ADULT CIVIL**

5    **PROTECTION ACT (Welfare and Institutions Code § 15600, *et seq.*)**

6
7    99.    Plaintiff incorporates the allegations contained in all of the prior paragraphs as if

8    restated and fully set forth herein.

9    100.    Plaintiff asserts this cause of action on behalf of himself and the California Senior

10   Subclass.

11   101.    Under California's Elder Abuse and Dependent Adult Civil Protection Act, Welfare

12   and Institutions Code § 15600, *et seq.*, unscrupulous professionals or businesspersons, or persons

13   posing as such may not financially exploit a senior (65 years of age or older) on the basis of their

14   age, health or mental condition by overcharging for services or products and using deceptive or

15   unfair business practices.

16
17   102.    Millennium Trust wrongfully took the monies and properties of Plaintiff and the

18   Senior Subclass Members, who are 65 years of age or older, and intended to defraud them and

19   unlawfully obtain possession of their retirement funds.

20   103.    Millennium Trust wrongfully took the property of Plaintiff and the California Senior

21   Subclass Members.

22
23   104.    As a result of the wrongful conduct of Millennium Trust, Plaintiff incurred

24   economic harm and losses.

25   105.    As a direct and proximate result of this wrongful conduct, Plaintiff sustained

26   injuries.

27   106.    Plaintiff further alleges that Millennium Trust's conduct has been malicious,

28   fraudulent, oppressive and has been carried out with an intent to damage and cause harm to the

SNYDER ♦ DORENFELD, LLP

1    Plaintiff and the members of the Class, and to harass, vex and annoy Plaintiff and the members of

2    the Class.  Therefore, Plaintiff and the members of the Class are entitled to recover punitive

3    damages in an amount appropriate to punish or make an example of Millennium Trust.

4                                          **COUNT V**

5                                   **UNFAIR COMPETITION**

6    
7                         **(Business and Professions Code § 17200 *et seq.*)**

8        107.    Plaintiff incorporates the allegations contained in all of the prior paragraphs as if

9    restated and fully set forth herein.

10       108.    Plaintiff asserts this cause of action on behalf of himself and the California

11   Subclass.

12       109.    California Business and Professions Code § 17200, *et seq.*, prohibits acts of "unfair

13   
14   competition," including any unlawful, fraudulent or deceptive business act or practice, as well as

15   "unfair, deceptive, untrue or misleading advertising."

16       110.    This private Attorney General action is brought by Plaintiff to remedy violations of

17   California's state consumer protection statutes arising out of Millennium Trust's and/or its

18   representatives' misrepresentations, omissions of material facts, and breaches of agreements.

19       111.    Millennium Trust, at all times material hereto, has engaged in "trade or commerce"

20   
21   by advertising, soliciting, offering or distributing a good or service by soliciting consumers within

22   the definition of California Business and Professions Code § 17200 *et seq.*

23       112.    This is a private Attorney General action brought on behalf of the general public.

24   As detailed herein, Millennium Trust has engaged in a pattern and practice of uniformly

25   misrepresenting and/or repudiating its contractual and legal obligations.

26       113.    Millennium Trust's deliberate acts of fraud and misrepresentation accomplished

27   through Ponzi schemes involving "investments" in illegal gambling activities, shell companies and

28   ghost investment vehicles orchestrated by Millennium Trust without regard to Plaintiff's legal and

CLASS ACTION COMPLAINT                                                                    19

SNYDER ♦ DORENFELD, LLP

equitable rights constitute acts of unlawful, unfair or deceptive business acts and practices that are injurious to the public within the meaning of California's Unfair Competition Law.

114.   The conduct of Millennium Trust is of a continuing nature that requires prompt relief.  Millennium Trust has uniformly represented to the general public through its representatives that its actions were legally appropriate when in fact they were not and/or it has concealed material facts (as detailed throughout this Complaint); and the disclosure of such information was necessary to make Millennium Trust's other representations not misleading for want of disclosure of such omitted facts or because Millennium Trust possesses superior knowledge of the true facts.

115.   Plaintiff and the California Subclass Members have suffered, and continue to suffer, actual injury in fact due to the willful acts of Millennium Trust that are contrary to the public policy of California, are substantially injurious to consumers of California and constitute unfair trade practices and competition under Section 17200, *et seq.* of the California Business and Professions Code.

116.   Based upon the obligations imposed upon Millennium Trust and its experience in the industry, Millennium Trust either knew, recklessly disregarded, reasonably should have known or were obligated under the law to provide correct and prompt information on the status of the SDIRAs owned by Plaintiff and the Members of the California Subclass and notify them if said SDIRAs were in default.  Millennium Trust failed to do so.  As a result, Plaintiff and the California Subclass Members were subjected to unlawful, unfair and/or fraudulent treatment and Millennium Trust was unjustly enriched and should be ordered to pay restitution pursuant to Business and Professions Code §§ 17203 and 17204.

117.   Members of the general public also face irreparable harm, such as, *inter alia*, not being fully informed of the true facts, not having the full value of any monies wrongfully received or saved provided to them, having the status of their SDIRA wrongfully misrepresented, and/or the associated financial information as to the value of their investment being falsely reported.

CLASS ACTION COMPLAINT                                                                                          20

118.     Equitable relief is appropriate to ensure adequate controls are in place to remedy the wrongful acts, prevent recurrence, and apprise the public of the true facts regarding what transpired.  Pursuant to California Business and Professions Code § 17203, Plaintiff is entitled to preliminary and permanent injunctive relief ordering Millennium Trust to cease this unfair competition, as well as disgorgement of all of its profits associated with this unfair competition.

119.     Plaintiff and the California Subclass Members seek an order from this Court prohibiting Millennium Trust from engaging or continuing to engage in the unlawful, unfair, or deceptive business acts or practices set forth in this Complaint and/or ordering that Millennium Trust perform its obligations under the law and reimburse Plaintiff and the Class Members all monies owed them as alleged in this Complaint.

120.     Plaintiff and the California Subclass Members additionally request an order from this Court requiring that Millennium Trust make restitution of profits and return or pay to Plaintiff and the California Subclass Members all of Millennium Trust's ill-gotten gains obtained from its illegal transactions and Ponzi schemes and/or pay restitution, including the amount of monies that should have been paid had Millennium Trust complied with its legal obligations, or, as equity requires.

121.     The above-described unlawful, unfair or fraudulent business acts and practices engaged in by Millennium Trust continue to this day and/or present a threat of irreparable harm to the general public.  Millennium Trust has failed to publicly acknowledge the wrongfulness of its actions and provide the complete relief required by the statute.

122.     Pursuant to California Business & Professions Code §17203, Plaintiff, on behalf of the general public, seeks a temporary, preliminary and/or permanent order from this Court prohibiting Millennium Trust from continuing to engage in the unlawful, unfair, or fraudulent business acts or practices set forth in this Complaint and from failing to fully disclose the true facts as set forth herein, and or ordering Millennium Trust or its representatives to stop misleading the

CLASS ACTION COMPLAINT                                                                                        21

public and engage in a corrective campaign, particularly in light of the public misperception created by Millennium Trust and/or its representatives' misstatements and omissions of material fact, as well as provide appropriate equitable monetary relief as the court deems just and appropriate to all persons with a vested interest therein.

123.   Plaintiff and the California Subclass Members further request a court order that an asset freeze or constructive trust be imposed over all monies in Millennium Trust's possession which rightfully belong to Plaintiff and the California Subclass Members.

124.   Plaintiff requests judgment and restitution and/or disgorgement from Millennium Trust in an amount to be proven at trial for the unfair, fraudulent and illegal business practices described herein.

**COUNT VI**

**<u>VIOLATION OF THE CONSUMER FINANCIAL</u>**

**<u>PROTECTION BUREAU'S REGULATIONS</u>**

**(15 U.S.C. section 78u, *et seq.*)**

125.   Plaintiff incorporates the allegations contained in all the prior paragraphs as if restated and fully set forth herein.

126.   Financial entities that engage in conduct that poses a risk to consumers as well as financial entities that engage in unfair, deceptive or abusive acts or practices are regulated by and subject to enforcement actions from the Consumer Financial Protection Bureau ("CFPB"), which was created by the Dodd-Frank Act, 15 U.S.C. section 78u, *et seq.*

127.   Millennium Trust herein materially interfered with  its customers' ability to understand a term or condition of a consumer financial product or service; took unreasonable advantage of its customers' lack of financial savvy; and precluded the customers' ability to protect themselves in the selection or use of consumer financial products or services.

SNYDER ◆ DORENFELD, LLP

128.    The aforementioned conduct by Millennium Trust constitutes unfair, deceptive and misleading practices by financial service firms within the meaning of the CFPB Rules.

129.    Plaintiff and the Class Members have suffered damages as a proximate result of Millennium Trust's violation of the CFPB rules.

**COUNT VII**

**NEGLIGENT MISREPRESENTATION**

130.    Plaintiff incorporates the allegations contained in all the prior paragraphs as if restated and fully set forth herein.

131.    Millennium Trust made several misrepresentations to the public at large and to Plaintiff and the Class Members as set forth above.  In particular, Millennium Trust sent account statements to Plaintiff and the Class Members stating that the SDIRAs had significant value when in fact the money had been stolen.  Millennium Trust also falsely stated that the "investments" made by Plaintiff and the Class Members would be safe, insured, accurately administered, and legally sound when in fact they were not.

132.    Millennium Trust should have known that these statements were false when it made them.

133.    Millennium Trust intended for Plaintiff and the Class Members to rely upon its false statements.

134.    Plaintiff and the Class Members did rely on Millennium Trust's false statements, and would never have invested through SDIRAs with Millennium Trust were it not for the false statements.

135.    Millennium Trust has enjoyed substantial financial gain, and Plaintiff and the Class Members have suffered severe financial loss as a result of their reliance on Millennium Trust's false statements.

SNYDER ♦ DORENFELD, LLP

136.    Plaintiff further alleges that Millennium Trust's conduct has been malicious, fraudulent, oppressive and has been carried out with an intent to damage and cause harm to the Plaintiff and the members of the Class, and to harass, vex and annoy Plaintiff and the members of the Class.  Therefore, Plaintiff and the members of the Class are entitled to recover punitive damages in an amount appropriate to punish or make an example of Millennium Trust.

**COUNT VIII**

**<u>CONSTRUCTIVE TRUST</u>**

137.    Plaintiff incorporates the allegations contained in all the prior paragraphs as if restated and fully set forth herein.

138.    As a proximate result of Millennium Trust's fraudulent and/or negligent misrepresentations and otherwise wrongful conduct as alleged herein, Plaintiff has sustained damages.

139.    By reason of the fraudulent and otherwise wrongful manner in which Millennium Trust obtained its alleged right, claim or interest in and to the property, Millennium Trust has no legal or equitable right, claim or interest therein.

140.    Instead, Millennium Trust is an involuntary trustee holding said property and profits therefrom in constructive trust for Plaintiff and the Class Members with the duty to convey the same to Plaintiff and the Class Members forthwith.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE Plaintiff, on behalf of himself and all others similarly situated, demands upon Millennium Trust for:

1.    An Order certifying the case as a class action;

2.    An Order appointing Plaintiff as the Class Representative of the Class, California Subclass and California Senior Subclass;

3.      An Order appointing undersigned counsel and their firms as counsel for the Class , California Subclass and California Senior Subclass;

4.      Compensatory damages, punitive damages, statutory penalties, restitution and/or disgorgement in an amount to be proven at trial;

5.      Injunctive relief;

6.      An order that a constructive trust be imposed over all monies in Millennium Trust's possession which rightfully belong to Plaintiff and/or an asset freeze of monies belonging to Millennium Trust;

7.      Attorney's fees, costs and expenses;

8.      Pre and post-judgment interest as allowed by law;

9.      An award of taxable costs; and

10.     Any and all such further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the Class Members, hereby demands a trial by jury as to all issues so triable as a matter of right.


                                        Respectfully Submitted,

Dated:  September 11, 2012              BURSOR & FISHER, P.A.


                                        By:  ____s/ L.Timothy Fisher_____
                                             *L. Timothy Fisher*

                                        L. Timothy Fisher (State Bar No. 191626)
                                        1990 North California Blvd., Suite 940
                                        Walnut Creek, CA 94596
                                        Telephone: (925) 300-4455
                                        Facsimile:  (925) 407-2700
                                        Email: ltfisher@bursor.com

SNYDER ♦ DORENFELD, LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SNYDER ♦ DORENFELD, LLP
David K. Dorenfeld, (State Bar No. 145056)
Michael W. Brown, (State Bar No. 205380)
5010 Chesebro Road
Agoura Hills, CA 91301
Telephone:  (818) 865-4000
Facsimile:   (818) 865-4010

CATHY JACKSON LERMAN, PA
Cathy J. Lerman
7857 W. Sample Rd., Suite 140
Coral Springs, FL 33065
Telephone: (954) 663-5818
Facsimile:  (954) 341-3568

*Attorneys for Plaintiff*

SNYDER ♦ DORENFELD, LLP

JS 44 (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

STANLEY LEVINE, individually and on behalf of a class of similarly situated persons,

**DEFENDANTS**

MILLENNIUM TRUST COMPANY, LLC

**(b)** County of Residence of First Listed Plaintiff   Orange
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
L. Timothy Fisher, Bursor & Fisher, P.A.
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596 Telephone: (925) 300-4455

Attorneys *(If Known)*   **'12CV2210 JM   JMA**

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans | Liability | ☐ 368 Asbestos Personal Injury Product | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| (Excl. Veterans) | ☐ 340 Marine | Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☒ 890 Other Statutory Actions |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | ☐ 380 Other Personal Property Damage | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| | ☐ 362 Personal Injury - Med. Malpractice | Product Liability | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 530 General | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | (Prisoner Petition) | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 1332 (A) (2)    28:1331 (vam)
Brief description of cause:
Plaintiff alleges that Defendant made false statements regarding Plaintiff's SDIRA.

## VII. REQUESTED IN COMPLAINT:

☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE      DOCKET NUMBER

DATE   09/11/2012

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE